**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| KIMBERLY GOODINE,<br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO,<br>Commissioner,<br>Social Security Administration,<br>Defendant. | ) | **CIVIL ACTION NO. 25-12050-MRG** |

## REPORT AND RECOMMENDATION

**September 17, 2026**

Hennessy, M.J.

The Plaintiff, Kimberly Goodine, seeks reversal of the decision by the Defendant, the Commissioner of the Social Security Administration ("the Commissioner"), denying her Supplemental Security Income ("SSI"), or, in the alternative, remand to the Administrative Law Judge ("ALJ").[1] (Docket #11). The Commissioner seeks an order affirming his decision. (Docket #18). By Order of Reference dated May 19, 2026, pursuant to 28 U.S.C. § 636(b)(1)(B), (Docket #21), this matter was referred to me for a Report and Recommendation on these two motions which are now ripe for adjudication.

For the reasons that follow, I RECOMMEND that Goodine's Motion to Remand the Commissioner's Decision (Docket #11) be ALLOWED and Defendant's Motion to Affirm the Commissioner's Decision (Docket #18) be DENIED.

[1] In general, the applicable legal standards are the same regardless of whether a claimant seeks SSI or Disability Insurance Benefits ("DIB"). However, separate, parallel statutes and regulations exist for SSI and DIB claims. Citations of statutes or regulations found in quoted court decisions should be considered to refer to the appropriate parallel provision as context dictates.

I. BACKGROUND

A. Procedural History

Goodine protectively applied for SSI on January 4, 2022, alleging disability beginning January 2, 2019. (Tr. 17). She later amended her onset date to January 4, 2022. (Tr. 35, 340). The application was denied initially and upon reconsideration. (Tr. 112-20; 139-45). On June 8, 2023, Goodine requested an administrative hearing. (Tr. 146). Following a March 27, 2024, hearing, the ALJ rendered a decision unfavorable to Goodine on June 13, 2024, finding that she had not been under a disability since January 4, 2022. (Tr. 17-26). On May 27, 2025, the Appeals Council denied Goodine's request for review, making the ALJ's June 13, 2024, decision final and ripe for judicial review. (Tr. 1-3).

Having timely pursued and exhausted her administrative remedies before the Commissioner, Goodine filed a complaint in this Court on July 22, 2025, pursuant to 42 U.S.C. § 405(g). (Docket #1). Goodine filed the motion for reversal or remand on October 21, 2025, (Docket #11), and the Commissioner filed a cross-motion on December 9, 2025, (Docket #18). On December 17, 2025, Goodine filed a response to the Commissioner's motion. (Docket #20).

B. Personal History

At the alleged onset date of January 4, 2022, Goodine was thirty-five years old. (Tr. 341). She completed twelfth grade in a vocational high school. (Id.). Goodine is not married. (Id.). She has no driver's license. (Tr. 267). Goodine was previously employed at a thread company where she inspected threads and packaged orders but has not worked since her onset date. (Tr. 40-41, 275).

C. Medical History

In early 2022, Goodine received treatment for depression with recurrent psychotic symptoms including hearing voices saying she should hurt herself, crying, and being unable to get out of bed. (Tr. 373, 379, 385, 390, 396-401). In February 2022, she reported hearing voices despite medication changes. (Tr. 373, 811). On March 15, 2022, Goodine reported that, despite a medication increase, she heard voices approximately two times a day, five days a week. (Tr. 362). She continued to report hearing voices in April 2022. (Tr. 816).

In May 2022, Goodine's provider started her on Haldol after she reported that she could not stand the voices. Her Haldol was increased in June. (Tr. 1686). By August 2022, Goodine reported she was no longer having hallucinations. (Tr. 1690). She confirmed that she was no longer having auditory hallucinations in December 2022. (Tr. 1695).

On January 30, 2024, Goodine presented to Saint Vincent Hospital stating that she had been hearing voices for the past month telling her to hurt herself as well as others and that she was beginning to feel like she might give in to them. (Tr. 2352). She was admitted to MetroWest Medical Center from January 31, 2024, to February 14, 2024. (Tr. 2393). Providers there documented a history of command auditory hallucinations for the past two years, worsening in the past few months. (Tr. 2394). Goodine was unable to identify any precipitants exacerbating her hallucinations. (Id.). During her hospitalization, Goodine participated in groups and a provider observed that "[o]verall she was interactive and making good use of the therapeutic milieu." (Tr. 2398, 2412). Upon discharge, Goodine continued to hear random auditory hallucinations but was not listening to them. (Tr. 2398). She denied suicidal or homicidal ideation and reported she felt safe for discharge. (Id.). Her depression and anxiety were both observed to be improved. (Id.).

Goodine followed up with her provider on February 20, 2024, following her release from MetroWest Medical Center. (Tr. 2837). On March 21, 2024, she again followed up with her provider, stating that she was feeling much better since her hospitalization and denying any current depression. (Tr. 2840).

D. State Agency Opinions

On July 27, 2022, Dr. Russell Phillips, a state agency psychologist consultant, reviewed records received through May 19, 2022. (Tr. 56, 58). Dr. Phillips found that Goodine had mild limitations in her ability to understand, remember, or apply information, and moderate limitations in her ability to interact with others; concentrate, persist, or maintain pace; and adapt or manage herself. (Tr. 59). Dr. Phillips determined that Goodine could understand and reliably recall simple information; maintain attention for two hours at a time and persist at simple tasks over eight- and forty-hour periods with normal supervision; and could tolerate simple changes in routine, avoid hazards, travel independently, and make/carry out simple plans. (Tr. 61-62). While Dr. Phillips concluded that Goodine could tolerate the minimum social demands of simple-task settings, he determined that she could not tolerate sustained contact with the general public. (Tr. 61).

On April 19, 2023, Dr. Lawrence Langer, a second state agency psychological consultant, assessed the same limitations as Dr. Phillips. (Tr. 65-73). In forming his opinion, Dr. Langer considered records through February 15, 2023. (Tr. 67).

F. Hearing Testimony

The ALJ held a telephonic hearing on March 27, 2024, at which Goodine, represented by counsel, and a vocational expert testified. (Tr. 34-55). Goodine testified that she was scared every time she was around people and felt that someone wanted to hurt her. (Tr. 43). She stated that she heard voices that told her to hurt herself and others and that the voices are worse when she goes

out in public. (Tr. 44-45). She noted that she could not go to family functions. (Tr. 47). Goodine testified that she had been treated by a psychiatrist and a therapist in the past but that it did not work for her, and she was not ready to engage in therapy currently. (Tr. 47). She indicated that she was managing her symptoms primarily by limiting the environments to which she exposed herself. (Tr. 48).

Goodine testified that she can go to the grocery store by herself to shop if she has a short list of three to four items. (Tr. 45). She reported feeling exhausted when she returned from the store due to the anxiety the experience produced. (Tr. 49). Goodine testified that her mother helped her with activities of daily living such as the timing and amount of her medications. (Tr. 46-47). She reported that she was able to get her Methadone treatment which was located a mile from her house. (Tr. 48). Goodine testified that she last used heroin seven years ago and had last used cocaine on one occasion three years ago but denied any illegal drug use in the prior two years. (Tr. 50-51).

Following Goodine's testimony, the ALJ asked a vocational expert for her assessment on the skill and exertional levels of Goodine's work history. (Tr. 51-52). The ALJ then asked the vocational expert to consider:

> a hypothetical person of the claimant's age, education and work experience who could perform a full range of [physical] work. However, there would be mental limitations as follows. First this person would be limited to simple, routine tasks. There should be no public contact. The person should tolerate occasional contact with supervisors and coworkers and this person could adapt to minor changes in the workplace.

(Tr. 52). The vocational expert responded that the hypothetical individual could not perform past work but could perform work as a cleaner, janitor position, consisting of 22,000 jobs nationally; an assembler, consisting of 39,000 jobs nationally; and warehouse worker, consisting of 17,000 jobs nationally. (Tr. 52-53). The ALJ then asked the vocational expert to consider the same

hypothetical individual with the additional limitation that "this person could not even tolerate occasional contacts with coworkers and supervisors." (Tr. 53). The vocational expert testified the additional limitation would eliminate all work. (Id.). The vocational expert further testified that if the hypothetical individual were absent from the workplace more than one day a month on an ongoing basis it would eliminate all work in the national economy. (Id.).

G. Administrative Decision

In assessing Goodine's social security application, the ALJ conducted the familiar five-step sequential evaluation process that determines whether an individual is disabled and thus entitled to benefits. See 20 C.F.R. § 416.920; Goodermote v. Sec'y of Health & Hum. Servs., 690 F.2d 5, 6-7 (1st Cir. 1982).

First, the ALJ considers the claimant's work activity and determines whether he is "doing substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(i). If the claimant is doing substantial gainful activity, the ALJ will find that she is not disabled. Id. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. § 416.972(b). The ALJ found that Goodine had not engaged in substantial gainful activity since January 4, 2022, the application date. (Tr. 19).

At the second step, the ALJ must determine whether the claimant has a medically determinable impairment or combination of impairments that is "severe" and meets the duration requirement of twelve months. 20 C.F.R. § 416.920(a)(4)(ii); see 20 C.F.R. § 416.909. The ALJ determined that Goodine had the following severe impairments: bipolar disorder, anxiety disorder, post-traumatic stress disorder ("PTSD"), agoraphobia, nightmare disorder, and opiate dependence. (Tr. 19).

Third, the ALJ must determine whether the claimant has impairments that meet or are medically equivalent to the specific list of impairments in Appendix 1 to Subpart P of the Social Security Regulations. 20 C.F.R. § 416.920(a)(4)(iii). If the claimant has an impairment that meets or equals one of the impairments listed in Appendix 1 and meets the duration requirement, then the claimant is disabled. Id. The ALJ found that Goodine did not have an impairment or combination of impairments meeting, or medically equivalent to, one of the impairments listed in Appendix 1. (Tr. 19).

At the fourth step, the ALJ considers the claimant's residual functional capacity ("RFC") and the claimant's past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). Whenever there is a determination that the claimant has a significant impairment, but not an Appendix 1 impairment, the ALJ must determine the claimant's RFC. 20 C.F.R. § 416.920(e). An individual's RFC is her ability to do physical and mental work activities, despite limitations from her impairments. 20 C.F.R. § 416.945(a)(1). The ALJ determined that:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: She can perform simple, routine tasks; she can have occasional contact with coworkers and supervisors; she can have no contact with the public; and she is able to adapt to minor changes.

(Tr. 21). The ALJ found that Goodine was unable to perform any past relevant work. (Tr. 24).

At the fifth step, the ALJ asks whether the claimant's impairments prevent her from performing other work found in the national economy. 20 C.F.R. § 416.945(a)(4)(v). The ALJ determined that, based upon her RFC and the testimony of the vocational expert, jobs exist in significant numbers in the national economy that Goodine could have performed. (Tr. 24). Accordingly, the ALJ found that Goodine was not disabled, as defined in the Social Security Act at any time since January 4, 2022. (Tr. 25).

## II. STANDARD OF REVIEW

The District Court may enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). However, the Court may not disturb the Commissioner's findings where they are supported by substantial evidence and the Commissioner has applied the correct legal standard. Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000). Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981). Although the administrative record might support multiple conclusions, the Court must uphold the Commissioner's findings when they are supported by substantial evidence. Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 770 (1st Cir. 1991). The quantum of proof necessary to sustain the Commissioner's decision is less than a preponderance of the evidence. Bath Iron Works Corp. v. United States Dep't of Labor, 336 F.3d 51, 57 (1st Cir. 2003). Therefore, a finding that a claimant's allegations are supported by substantial evidence does not mean that the Commissioner's decision is unsupported by substantial evidence.

It is the plaintiff's burden to prove that she is disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 (1987). The plaintiff bears the burden of production and persuasion at steps one through four of the sequential evaluation process. Id. at 146 n.5; Vazquez v. Sec'y of Health & Human Servs., 683 F.2d 1, 2 (1st Cir. 1982). This includes the burden of establishing her RFC. 20 C.F.R. § 416.912(a). At step five, the Commissioner has the burden of identifying specific jobs in the national economy that the plaintiff can perform. Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001).

## III. ANALYSIS

When assessing a claimant's RFC, an ALJ considers all relevant medical evidence including opinions, treatment notes, and subjective allegations. See 20 C.F.R. § 416.945(a)(3). Because an ALJ is "not qualified to interpret raw medical data in functional terms," an ALJ's RFC assessment must be supported by medical opinions in the record. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). "A medical opinion cannot serve as substantial evidence if it is based on a significantly incomplete record." Farrar v. Kijakazi, 596 F. Supp. 3d 255, 259 (D. Mass. 2022). "The record is significantly incomplete if the evidence added after the [medical opinion] materially changed the basis for assessing the claimant's limitations. The record remains materially unchanged where the new evidence either reveals no greater limitations or is arguably consistent with the [medical opinion]." Reed v. Saul, No. 19-12369-FDS, 2020 WL 4938341, at *6 (D. Mass. Aug. 21, 2020) (quotation and citations omitted). The burden of making the materiality determination lies with the ALJ and the ALJ must make the determination adequately clear. Giandomenico v. U.S. Soc. Sec. Admin., No. 16-cv-506-PB, 2017 WL 5484657, at *4 (D.N.H. Nov. 15, 2017).

The ALJ found the opinions of Dr. Phillips and Dr. Langer "generally persuasive," although he determined that the overall evidence of record warranted a more restrictive limitation--to minor changes instead of simple changes--as well as co-worker and supervisor restrictions. (Tr. 24). Goodine argues that Dr. Phillips' and Dr. Langer's opinions were based on an incomplete medical record and, therefore, the RFC assessment lacks substantial evidentiary support. (Docket #11 at 14-20). Specifically, Goodine points to the opinions' failure to address her hospitalization from January 30, 2024, to February 14, 2024, to address auditory hallucinations telling her to hurt herself and others. (Tr. 2393, 2352). This hospitalization occurred some eighteen months after

Dr. Phillips' July 27, 2022, assessment, nine months after Dr. Langer's April 19, 2023, assessment, and four-and-a-half months before the ALJ's decision on June 13, 2024.

Dr. Langer's April 2023 opinion on which the ALJ relied in his June 13, 2024 decision, appears to have taken into account Goodine's auditory hallucinations (and other symptoms). For instance, Dr. Langer began the opinion by noting that Goodine's January 4, 2022 claim raises the following impairments:

> PTSD, BI POLAR 1, GENERAL ANXIETY DISORDER, MAJOR DEPRESSION WITH PSYCHOSIS, HALLUCINATIONS, AGORAPHOBIA, SCHIZOPHRENIA. Changed Condition 06/01/2021. Hearing the voices and having them to tell me (sic) to hurt other people and not just myself anymore…New Condition 06/01/2021 Same unable to be around people, hard to concentrate and follow directions.

(Tr. 66). Under the "Findings of Fact and Analysis of Evidence," Dr. Langer states in relevant part, "[t]he reported auditory hallucinations (no commands) are noted and mental status observations are normal otherwise across all provider's records." (Tr. 67). Finally, in the Mental RFC additional explanation, Dr. Langer states in relevant part, "[t]he reported auditory hallucinations (no commands) are noted and mental status observations are normal otherwise across all provider's records." (Tr. 71-72).

As these entries indicate, Dr. Langer accepted as part of the record evidence on which he would base his opinion that Goodine reported experiencing auditory hallucinations. Indeed, Dr. Langer's use of the word "otherwise" in the same sentence is fairly read as part of a summary; namely, that all provider records report normal mental status observations except insofar as they report Goodine's complaint of auditory hallucinations. Standing alone, this would be convincing evidence that Dr. Langer factored into his determination Goodine's report of auditory hallucinations. In such a case, the 2024 hospitalization would not raise materially new symptoms.

However, there are two additional identical notations regarding auditory hallucinations which call into question this conclusion. After reciting the symptoms underlying a partial hospitalization, Dr. Langer recounts that Nurse Practitioner ("NP") Kimberly Abdow's December 2022 record reports that Goodine is "no longer experiencing auditory hallucinations." (Tr. 68). This same note is repeated verbatim under the Psychiatric Review Technique "Additional Explanation" for mental limitations. (Tr. 69). Significantly, this record is the last discussed by Dr. Langer and no later dated information about auditory hallucinations is mentioned in his opinion. Reading the opinion as a whole, it is unclear whether and to what extent the reported cessation of auditory hallucinations affected Dr. Langer's assessment of Goodine's limitations.

In his opinion, the ALJ acknowledged the 2024 hospitalization and the auditory command hallucinations precipitating it but noted that all mental status exams with her outpatient mental health provider from the alleged onset date onward were entirely normal and emphasized that Goodine reported at her March 21, 2024 appointment that she was feeling much better since her hospitalization, and that she was no longer experiencing hallucinations. (Tr. 23-24). The Commissioner points to these records as cited by the ALJ as evidence that Goodine experienced no substantial change in her condition following Dr. Phillips' and Dr. Langer's opinions and, thus, the opinions provide substantial evidence. (Docket #19 at 13). However, a careful review of the progress reports completed by NP Abdow on Goodine's behalf reveals that the ALJ incorrectly interpreted the March 21, 2024 progress note.

Goodine had two visits with NP Abdow following her hospital discharge. (Tr. 2837, 2840). In the February 20, 2024 treatment note, it states that "Pt. stated she is no longer having +AH, she still denies commands." (Tr. 2837). On March 21, 2024, the treatment note states "Pt. stated she is no longer having +AH, she still denies commands." (Tr. 2840). This exact notation first appears

in the August 14, 2023 treatment note. (Tr. 2832). It is repeated verbatim in the November 9, 2023 note. (Tr. 2835). In each note, immediately following this sentence is the following:

> Pt. asked if she could try and taper her Lamictal we went over taper instructions together but agreed to leave full script available in case of any negative side effects of (sic) if she feels worse. Pt nd (sic) mother have to move in with maternal aunt d/t eviction. Pt and provider reviewed labs. we discussed her high chol. Will mail pt copy to share with her primary care provider. we will fax a copy as well with A ROI on file pt. stated her mom is still healing and has long covid. Is getting ready for spring time. She stated she is better, is no longer hearing voices as much as she was. She stated she feels less depression , and anxiety. She stated she is still trying to find fun things to do to stay busy, pleasant and cooperative and organized in thought and in conversation. Her daughter is better as well. Continue same.

(Tr. 2832, 2835, 2837, 2840). A review of these records makes clear that NP Abdow was simply adding on to prior treatment notes and that the notation on March 21, 2024 that Goodine was no longer have auditory hallucinations was not a current treatment note but instead dates to August 14, 2023. Supporting this finding is the fact that, while each treatment note cited above indicates that Goodine is no longer experiencing auditory hallucinations, each treatment note also states that Goodine is no longer hearing voices as much as she was. The ALJ addressed neither the redundancy of these records nor the internal inconsistency in the treatment note. Hence, the ALJ unsupportably used a notation in a treatment note that predated Goodine's hospitalization to explain why the record on which Dr. Phillips and Langer relied remained materially unchanged following the hospitalization.

Nor does Dr. Phillips' opinion standing on its own equate to substantial evidence. As an initial matter, while the ALJ found Dr. Phillips' and Dr. Langer's opinions generally persuasive, the ALJ did not address the opinions separately, nor did he indicate whether he would have found either opinion persuasive in the absence of the other. (See Tr. 24). Furthermore, the ALJ's reading of NP Abdow's treatment note of March 21, 2024, which he used to support his materiality decision remains unsupportable.

The court finds that the recurrence of auditory command hallucinations, which Goodine experienced following the issuance of Dr. Langer's opinion and which resulted in an inpatient hospitalization, was a materially new symptom. The ALJ failed to meet his burden of demonstrating that the record was materially unchanged following Dr. Phillips' and Dr. Langer's opinions, and, thus, the ALJ was obligated to solicit a new medical opinion prior to making an RFC determination. See Mattison v. Comm'r of Soc. Sec., No. 1:18-CV-01339 EAW, 2020 WL 13558228, at *4 (W.D.N.Y. Jan. 29, 2020) (holding plaintiff's deteriorating mental state, evidenced by suicide attempt and hospitalization, rendered prior medical opinions stale and therefore it was error for ALJ to rely on those opinions in assessing severity of plaintiff's medical condition); Diggett v. Berryhill, No. 16-233-M, 2017 WL 3705072, at * (D.R.I. Aug. 25, 2017) (holding ALJ was not qualified to understand the effect of plaintiff's thirty-four-pound weight gain on plaintiff's functional abilities and thus consultant physician's opinion prior to weight gain could not equate to substantial evidence). The ALJ's failure to meet this burden requires remand. Having determined that the case should be remanded on this basis, the court declines to address Goodine's other arguments.

## IV. CONCLUSION

For the foregoing reasons, I hereby RECOMMEND that Goodine's Motion to Remand the Commissioner's Decision (Docket #11) be ALLOWED and Defendant's Motion to Affirm the Commissioner's Decision (Docket #18) be DENIED.[2]

/s/ David H. Hennessy
David H. Hennessy
UNITED STATES MAGISTRATE JUDGE

[2] The parties are hereby advised that, under the provisions of Fed. R. Civ. P. 72, any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objections are made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Emiliano Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-05 (1st Cir. 1980); see also Thomas v. Arn, 474 U.S. 140 (1985).